IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | |
|---|---|
| JANET THOMAS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:14-CV-05013-NKL |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social | ) |
| Security, | ) |
| | ) |
| Defendants. | ) |

**ORDER**

Plaintiff Janet Thomas appeals the Commissioner of Social Security's decision finding that she is not entitled to supplemental security income (SSI) under Title XVI of the Social Security Act. The matter is remanded for further proceedings.

**I.     Background**

Thomas was born in 1960 and has had no reported earnings since 1988. She has applied for and been denied SSI benefits before. In this case, she claims disability beginning September 21, 2006, due to mental disorders, back pain, numbness in the hands, seizures, and migraine headaches. Two hearings were held in connection with Thomas' current claim, one in June 2009 and, after remand by the Appeals Council[1], another in July 2012. On appeal to this Court, Thomas challenges the portion of the

---

[1] On June 30, 2011, the Appeals Council issued an Order of the Appeals Council remanding ALJ Headrick's September 30, 2009, unfavorable decision because the ALJ failed to evaluate Thomas's testimony under the proper credibility standard and failed to proffer the vocational witness interrogatories to Thomas's council. [Tr. 56-57].

decision rendered September 21, 2012 finding her mental limitations not disabling.

Thomas has had two psychological evaluations by Robert Whitten, Ph.D. In May 2000, on referral from Disability Determination Services, Thomas reported a limited ability to stand and walk and lift; depressive apathy making it a struggle for her to get up and do anything; and daily panic attacks. Dr. Whitten noted Thomas' hospitalization the prior year, resulting from depression, and that she had stopped treatment and was not taking medication. Dr. Whitten observed that Thomas exhibited a dreary appearance with a pale skin tone and red eyes; she did not appear to have regularly bathed; and was "clearly slowed by depression." [Tr. 215]. On the Wechsler Memory Scale–Revised, Thomas scored in the 24th percentile for retention of story facts, which is a high low average, and performed "poorly" on several sampled Wechsler Adult Intelligent Scale–Third Edition arithmetic problems of moderate difficulty. [Tr. 214].

Dr. Whitten diagnosed Thomas with major depression, recurrent with features of generalized anxiety, panic disorder with agoraphobia, polysubstance dependence in reported early remission, and personality disorder not otherwise specified with borderline and co-dependent traits most noted, and assigned her a Global Assessment of Functioning (GAF) score of 45, suggesting serious symptoms. Based on his examination and a review of Thomas's medical and educational records, Dr. Whitten concluded that Thomas was able to understand moderately complex work tasks, though her concentration was well below average and work focus would be negatively affected by depressive apathy and loss of drive and episodes of panic. Dr. Whitten concluded that her "[w]ork pace then would be anticipated currently to be inadequate and not sufficiently sustained. Work

2

focus might drift." [Tr. 215]. The ALJ gave Dr. Whitten's May 2000 opinion little weight because the evaluation was years before the application date and because the record suggested Thomas' substance abuse was heavier at the time. [Tr. 29].

In January 2005, Thomas returned to Dr. Whitten for a psychological evaluation for Family Support Services. Thomas reported that she remained constantly fatigued and in pain in her joints and muscles; and had near constant depression and anxiety with continuing daily bouts of panic episodes. Thomas said she would not typically go out alone and did not feel she could work at any jobs because she feared becoming enraged towards others and might either hit them or walk off the job to avoid doing so. Dr. Whitten observed that Thomas looked very ill and drained of energy, with a dark, yellowed face and eyes with dark circles "reflecting discomfort and months of poor sleep quality…[and] show[ing] signs of intense depression facially[.]" [Tr. 260].

Dr. Whitten opined:

> [H]er potential is clearly average but she does not quite reach that level due to impaired concentration and memory and lack of formal education quitting school just a few months into her ninth grade…She continues to show impairment in mental computations as a sign of heavily damaged concentration ability…. Janet can understand semi-skilled work procedures. Her retention is well below average of what she hears once and may be a problem in work settings. She has seriously impaired concentration and may not be able to sustain concentration on even simple work tasks over a work day or week off medications.

[Tr. at 261]. Dr. Whitten suggested that if Thomas was taking medication she would have "much better functioning." [Tr. 263]. He also noted Thomas' report of difficulty getting along with others while off medication, but indicated she adequately related to

3

him. Dr. Whitten thought Thomas could adapt to work changes and make simple work decisions. The ALJ gave Dr. Whitten's January 2005 opinion little weight because it was rendered before Thomas' application date and not supported by later evidence of moderate symptoms. [Tr. 30].

Thomas began seeing Christopher Andrew, M.D., a neurologist and psychiatrist, in August 2005 reporting headaches occurring two to three times per week with nausea, vomiting, phonophobia, and photophobia. Thomas was prescribed Topomax and Depakote. By December 2005, Thomas was reporting irritability to Dr. Andrew along with mood swings and poor sleep. Thomas was diagnosed with migraines, anxiety and sinusitis. Thomas continued to see Dr. Andrews on a monthly basis through June 2006 and received refills on her medications. In June 2006, Thomas reported anxiety. She had not filled a prior prescription and was attempting to get custody of her three-week old grandson. When Thomas returned in October 2006, she was off all medications.

In October 2006, Thomas saw Alan Ramsey, M.S., a licensed psychologist, for an evaluation for purposes of applying for Medicaid. In addition to performing a full psychological evaluation, Mr. Ramsey reviewed some of Thomas's prior records. [Tr. 581-82]. He diagnosed alcohol dependency in remission, panic disorder without agoraphobia, and chronic posttraumatic stress disorder, and assigned Thomas a GAF score of 51, a score suggesting moderate symptoms. He concluded that Thomas met the criteria for medical assistance from the state, which includes the inability work because of a medical condition, and recommended she seek treatment and a referral to vocational rehabilitation. The ALJ gave Mr. Ramsey's opinion little weight, concluding that it was

4

inconsistent with the GAF score suggesting moderate symptoms, and appeared to be based on Thomas' subjective reports.

Thomas saw Amy Kay Cole, Ph.D. in November 2006 for a psychological evaluation for DDS. Thomas reported that she had been fired from the majority of her jobs in the past because she was calling in sick too frequently and that her biggest obstacles to employment included difficulty with depression and concentration. She also reported a long history of panic attacks due to multiple triggers, including large groups of people, financial difficulties, and custody issues related to her grandson.

Dr. Cole observed that Thomas looked older than her stated age, was disheveled and walked somewhat slowly, and her mood was slightly depressed and affect flat. Thomas' cognitive functioning was intact with mild concentration difficulties. She was not taking any medication and had not had counseling in many years. Dr. Cole opined that Thomas was experiencing a major depressive episode with crying spells, limited concentration, excessive sleeping, and limited energy, and weekly panic attacks. Dr. Cole diagnosed Thomas with major depressive disorder, recurrent, moderate; panic disorder with agoraphobia; alcohol dependence, in full sustained remission; and personality disorder, not otherwise specified, with borderline features, by prior psychological evaluation. Dr. Cole assigned Thomas a GAF score of 52, suggesting moderate symptoms, and opined:

> Ms. [Thomas] would be able to understand simple tasks. She would require regular, consistent supervision in order to sustain concentration and persist in those tasks. She would not work well with the general public, and she would require a very small number of coworkers and a supervisor in the

5

> event that she did return to work. In sum, she would be able to adapt to a simple workplace environment if she received regular supervision. It is likely that her depression and anxiety will lead to frequent absences in the workplace.

[Tr. 279]. The ALJ gave most of Dr. Cole's opinion little weight, as not being supported by indications of moderate symptoms, except the part of the opinion regarding restriction with the public, which the ALJ gave some weight. [Tr. 30].

Thomas sought treatment on eight occasions at Dr. Andrew's office from February 2007 to November 2008 for stress and anxiety, and was prescribed medications.

Thomas was hospitalized from October 26 to October 29, 2008, after overdosing on medications and testing positive for amphetamines, methamphetamine, benzodiazepines, and marijuana. Further inpatient treatment was recommended, but she refused it.

Thomas was brought to the hospital on February 11, 2009, after the police became involved with a domestic incident. Thomas allegedly made suicidal threats, but at the hospital she denied suicidal thoughts. She admitted to being a "fairly heavy consumer of numerous substances, including THC, opiates, and benzodiazepines." [Tr. 360, 586]. Thomas was encouraged to start medication with a three- to four-day stay to stabilize, but she requested discharge. [Tr. 360].

In July 2009, Thomas saw David Van Pelt, Psy.D., for a psychological evaluation to determine eligibility for Social Security Disability. Thomas reported to Dr. Van Pelt that she experienced no highs, only lows; described excessive anxiety and worry about a number of different events, being easily fatigued, and having concentration difficulties,

irritability, muscle tension and difficulty falling or staying asleep. "[Thomas] acknowledged a disruption in the usually integrated functions of consciousness, memory and/ or perception of the environment." [Tr. 386]. Thomas reported that her mood most days is "sad but I don't let people see it" and that she experienced hallucinations. [Tr. 390].

Dr. Van Pelt observed that Thomas appeared disheveled and unkempt in appearance, her hygiene appeared non-routine, she exhibited an awkward gait, and her attention and concentration evidenced minor impairment with impairment in her recall and memory abilities. Dr. Van Pelt noted that Thomas's intellectual ability was below average, her judgment was poor, her insight was limited, and her overall impulse control was considered between fair and poor, as she reported vague homicidal ideation. He noted Thomas' responses on personality testing were less than accurate and represented an over-reporting of symptoms. He diagnosed Thomas with generalized anxiety disorder, dissociative disorder not otherwise specified, borderline personality disorder, and borderline intellectual functioning, and assigned a GAF score of 52.

On a Medical Source Statement–Mental that Dr. Van Pelt completed for DDS, he indicated that Thomas exhibited moderate limitations in the areas of understanding and remembering complex instructions, carrying out complex instructions, the ability to make judgments on complex work related decisions, and responding appropriately to usual work situations and to changes in a routine work. He indicated Thomas would have diminished ability to socially interact. Dr. Van Pelt opined: "Her limited intellectual functioning combined with her level of anxiety cause impairment in these areas."

7

[Tr. 384]. He also opined, "She is not likely to tolerate change very well at all currently. Her ability to interact socially is diminished." [*Id.*]. Dr. Van Pelt stated that while Thomas would be able to understand and remember simple instructions during a normal workday, she "will have difficulty concentrating and persisting on simple tasks during a normal 8-hour workday. She demonstrates the capacity to interact in limited contact situations involving the general public, and in limited contact situations involving work supervisors and/or coworkers." [Tr. 391]. The ALJ gave some weight to Dr. Van Pelt's opinion with regard to moderate limitations.

On June 10, 2009, Thomas participated in a hearing before Administrative Law Judge Charles Headrick. At the hearing, Thomas testified that her depression and anxiety paralyzed her, causing her difficulty in leaving the house, performing tasks like grocery shopping, and causing her excessive worry and crying spells. Thomas also testified that her PTSD caused her to become physically sick, experience constant migraine headaches, fatigue, and memory and concentration problems. Thomas testified that while she bathed regularly, it was because her daughter, Courtney Fox, would remind her to do so and draw her bath. Fox moved her mother closer to Fox's workplace, in order to be able to check on Thomas every day.

Fox testified at the June 2009 hearing that she helped her mother daily, including doing grocery shopping and laundry, and paying bills. Fox said Thomas had mood swings and anxiety attacks, and difficulty concentrating and leaving the house.

In January 2010, Thomas had an intake interview with College Skyline Center and reported symptoms of depression, anxiety, post-traumatic stress disorder, and borderline

8

personality disorder. She was diagnosed with PTSD and major depressive disorder, recurrent and severe. At a visit in July 2010, she was assigned a GAF score of 49.

On March 1, 2011, Thomas saw Kevin Whisman, Ph.D., for an evaluation to determine eligibility for Medicaid. Dr. Wiseman observed that Thomas's mood was dysphoric, but otherwise within normal limits. Thomas reported that she had difficulty sleeping, was often tearful, experienced daily panic attacks, and was paralyzed by anxiety and worry. The results of a personality assessment inventory suggested a person who is reporting marked distress. Dr. Whisman diagnosed generalized anxiety disorder, somatoform disorder, and cannabis abuse, assigned Thomas a GAF score of 52, and concluded that Thomas's mental health symptoms did not appear to be of a severity precluding her from employment. The ALJ gave some weight to Dr. Whisman's opinion as consistent with moderate symptoms.

In January 2012, Thomas was seen at the Community Clinic in Joplin, reporting that her husband had passed away in December 2011 and she had been crying frequently. She was diagnosed with neuropathy, hypertension, hyperlipidemia, and major affective disorder. She was seen in February for medication refills and referred to the Ozark Center for counseling. In February 2012, at the Ozarks Center, Thomas was diagnosed with major depressive disorder, recurrent and severe, and anxiety disorder NOS, and assigned a GAF score of 55. At a return visit in March, Thomas reported feeling angrier and having had panic attacks. Her medication was adjusted.

Thomas' records were reviewed twice at the request of the state agency, by Lester Bland, Psy.D., and Kenneth Bowles, Ph.D. The ALJ gave both opinions little weight.

9

In July 2012, Thomas appeared at a hearing before ALJ Michael Dayton. Thomas testified that she had several physical and mental health problems that prevented her from working, including concentration issues. Thomas testified that she could not often focus to watch an entire movie or read more than a few paragraphs. She also testified that her depression prevents her from being around people because she cries a lot, and that stress makes her depression worse. Thomas testified that she experiences a panic attack four to five times a week that lasts for approximately 30 minutes to one hour with medication. She grocery shops about once a month and only for ten minutes; her daughter does most of her grocery shopping. When Thomas does attempt to shop, she often is forced to leave the store because of her anxiety. She stated that she could take her grandchild to the playground or go to a local convenience store, but had difficulty in a large store like Wal-Mart. Thomas testified that she has not taken illegal drugs since 2009. The ALJ found that Thomas was not entirely credible because her allegations were not supported by objective evidence, examination findings, and treatment notes. The ALJ also found that Thomas' daughter's testimony was not persuasive. [Tr. 31].

The ALJ concluded Thomas retained the residual functional capacity to perform a range of light work:

> Specifically, the claimant is able to lift or carry up to twenty pounds occasionally and ten pounds frequently, stand a total of eight hours, walk a total of eight hours, and sit a total of eight hours. She is able to frequently push or pull within the same weight restrictions as lifting or carrying. The claimant is able to frequently climb stairs or ramps and occasionally climb ladders, ropes, or scaffolds. She is not limited in the ability to balance and is able to frequently stoop, kneel, crouch, and crawl. The claimant is able to reach in all

> directions frequently and has no limitation in her ability to handle, finger, or feel. She can continuously use foot controls. The claimant can tolerate frequent exposure to humidity or wetness, dust, odors, fumes, pulmonary irritants, extreme cold, extreme heat, and vibrations. She is able to tolerate loud background noise. The claimant has the ability to understand and remember simple and intermediate instructions. She has the ability to maintain concentration, persistence, or pace to carry out simple and intermediate instructions in a work environment that does not require more than occasional interaction with the general public.

[Tr. 22].

Based on the vocational expert witness' testimony, the ALJ concluded Thomas did not have any past relevant work, but that Thomas could perform work such as bindery worker (DOT 692.685-146), inserting machine operator (DOT 208.685-018), and collator operator (DOT 208.685-010). [Tr. 29; 694-96].

**II.    Discussion**

Thomas argues that the RFC is not based on substantial evidence on the record as a whole because it is inconsistent with the limitations consistently found by most mental health professionals who examined her; the ALJ appeared to believe that moderate limitations could not be disabling; and the ALJ failed to consider or include Thomas' limitations in interacting with coworkers and supervisors.

The Commissioner's decision is reversed "only if [it is] not supported by substantial evidence or result from an error of law." *Byers v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012). Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support the Commissioner's conclusions. *See Juszczyk v. Astrue,* 542 F.3d 626, 631 (8th Cir. 2008). "If substantial evidence

11

supports the Commissioner's conclusions, [the Court] does not reverse even if it would reach a different conclusion, or merely because substantial evidence also supports the contrary outcome." *Byers*, 687 at 915. In this case, the Court concludes that the matter must be remanded for the ALJ to form an RFC consistent with the record as a whole.

Thomas' mental health was evaluated six times for purposes of Medicaid or Social Security determinations: by Dr. Whitten, in 2000 and 2005; Mr. Ramsey, in 2006; Dr. Cole, in 2006; Dr. Van Pelt, in 2009; and Dr. Whisman, in 2011. Three of the six opinions finding disabling symptoms—Dr. Whitten's in 2005, Mr. Ramsey's, and Dr. Cole's—were provided at the request of the state agency. And out of all six evaluations, five (all except Dr. Whisman's) were inconsistent with employment according to Social Security guidance regarding unskilled work. *See* SSR 85-15, 1985 WL 56857 (1985).

The SSR provides:

> The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base. This, in turn, would justify a finding of disability because even favorable age, education, or work experience will not offset such a severely limited occupational base.

*Id.* at *4. In short, for an individual to be able to perform any job at any skill level, the individual must be able to 1) understand and remember at least simple instructions; 2) carry out at least simple instructions, which logically includes the ability to concentrate

12

for more than short periods of time in order to carry them out; 3) respond appropriately to supervisors and coworkers; and 4) deal with changes in a routine work setting. The ALJ's opinion that Thomas is capable of performing unskilled work is not supported by substantial evidence on the record as a whole. Three examiners, Dr. Whitten (in both 2000 and 2005), Dr. Cole, and Dr. Van Pelt concluded Thomas was unable to carry out or concentrate on simple tasks. Two examiners, Dr. Cole and Dr. Van Pelt, found Thomas limited in her ability to respond appropriately to her supervisors and coworkers. Dr. Van Pelt and Dr. Cole also opined that Thomas was unlikely to be able to accept basic changes in a work setting.

Further, the ALJ gave no more than "some weight" to the only opinion consistent with no disability, Dr. Whisman's. [Tr. 28]. As for the other five, which supported a finding of disability, the ALJ gave "some weight" to Dr. Van Pelt's opinion; "little weight" to the opinions of Dr. Whitten (both 2000 and 2005) and Mr. Ramsey; and "little weight" to the opinion of Dr. Cole except the portion concerning restrictions in dealing with the public, which the ALJ gave "some weight." [Tr. 26-28].

The ALJ also made repeated reference to findings of moderate symptoms, in essence concluding that they are not consistent with a finding of disability.[2] But the presence of moderate symptoms, rather than marked ones, does not mean a claimant is

---

[2] *E.g.,* Tr. 24 ("Despite the conclusions of these examiners, the reports and GAF scores suggest moderate symptoms. Thus, this evidence does not support the extreme degree of limitation alleged by the claimant."); Tr. 25 ("Overall, the examinations since the claimant's filing date have indicated only moderate symptoms."); and Tr. 27 ("[Dr. Whitten's 2005 opinion] was rendered prior to the claimant's filing date and it is not supported by later evidence of only moderate symptoms.")

13

able to perform the demands of unskilled work:

> There has been some misunderstanding in the evaluation of mental impairments…the sequential evaluation process mandated by the regulations does not end with the finding that the impairment, though severe, does not meet or equal an impairment listed in Appendix 1 of the regulations. The process must go on to consider whether the individual can meet the mental demands of past relevant…and, if not, whether the person can do other work, considering his or her remaining mental capacities reflected in terms of the occupational base, age, education, and work experience. The decisionmaker must not assume that failure to meet or equal a listed mental impairment equates with capacity to do at least unskilled work. This decision requires careful consideration of the assessment of RFC.

SSR 85-15, 1985 WL 56857 at *4. In equating moderate symptoms with ability to meet the demands of unskilled work, the ALJ failed to demonstrate "careful consideration" in establishing the RFC.

The RFC is unsupported by substantial evidence on the record as a whole in additional respects. The ALJ gave little weight to Mr. Ramsey's opinion that Thomas' psychological symptoms would preclude employment, assuming the opinion was based on Thomas' subjective reports, and finding it inconsistent with the GAF score indicating moderate symptoms. [Tr. 27]. But Mr. Ramsey noted in his report that he reviewed some of Thomas's prior records in addition to performing a full psychological evaluation, examining both past social and medical history as well as performing a mental status examination. [Tr. 581-82]. Additionally, GAF scores are based in part on subjective reports. It does not follow that the ALJ should give more weight to the GAF score Mr. Ramsey assigned than to the actual narrative report Mr. Ramsey prepared.

14

The ALJ picked and chose from Dr. Van Pelt's opinion, failing to address the portion of the narrative reflecting that Thomas was unable to perform the minimum demands of unskilled work, and would have difficulty concentrating and persisting on simple tasks during a normal 8-hour workday. The opinion is consistent with other portions of the record as a whole, including Dr. Cole's opinion that Thomas would require regular, consistent supervision in order to sustain concentration and persist on tasks, and that Thomas' depression and anxiety would lead to frequent absences in the workplace; and Thomas' own description of her symptoms. An "ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of non-disability." *Taylor ex rel. McKinnies v. Barnhart,* 333 F.Supp.2d 846, 856 (E.D. Mo. 2004) (quoting *Robinson v. Barnhart,* 366 F.3d 1078, 1083 (10th Cir. 2004)).

The ALJ gave some weight to Dr. Whisman's opinion that Thomas had moderate symptoms and was not precluded from employment. Tr. 28. But Dr. Whisman's opinion was conclusory and identified no limitations at all. The ALJ also focused on Dr. Whisman's assignment of a GAF score of 52, even though three other examiners (Mr. Ramsey, Dr. Cole, and Dr. Van Pelt) assigned GAF scores of 51 or 52 and provided opinions precluding employment.

The ALJ's credibility assessment is also unsupported by substantial evidence. The ALJ noted various factors that "do[] not enhance [Thomas'] credibility" with respect to her alleged physical and mental limitations. [Tr. 25-26]. Although a claimant's credibility "is primarily for the ALJ to decide, not the courts," *Baldwin v. Barnhart,* 349 F.3d 549, 558 (8th Cir. 2003), a court will not defer to an ALJ if the ALJ fails to give

15

good reasons for discrediting the testimony, *Gregg v. Barnhart,* 354 F.3d 710, 714 (8th Cir. 2003). The ALJ points to GAF scores in the low 50's as supporting only moderate symptoms, and concludes Thomas' allegations are inconsistent with limitations any greater than those set out in the RFC. [Tr. 24-25]. But as discussed above, a finding of moderate symptoms does not necessarily mean a claimant is not disabled. The ALJ points out that Thomas' panic attacks are triggered by large groups of people as well as other stressors "not directly related to her work activities," such as financial difficulties and custody issues related to her grandchild. [Tr. 24]. That Thomas' panic attacks have multiple triggers does not mean Thomas' panic attacks in large groups of people are not credible or are not disabling for purposes of work activities. The ALJ also summarizes, "As discussed above, [Thomas'] testimony as to her activities has not been consistent *especially when describing physical impairments*." [Tr. 26] (emphasis added). The ALJ's conclusion with respect to Thomas' credibility concerning her mental impairments is vague at best. The ALJ did not give good reasons for discounting Thomas' allegations concerning her mental impairments.

Next, the mental health limitations the ALJ included in the RFC are not consistent with substantial evidence in the record as a whole. The Social Security guidance, SSR 85-15, provides:

> The reaction to the demands of work (stress) is highly individualized, and mental illness is characterized by adverse responses to seemingly trivial circumstances. The mentally impaired may cease to function effectively when facing such demands as getting to work regularly, having their performance supervised, and remaining in the workplace for a full day. A person…may experience terror and begin to

16

> hallucinate when approached by a stranger asking a question. Thus, the mentally impaired may have difficulty meeting the requirements of even so-called "low-stress" jobs.
>
> Because response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job. A claimant's condition may make performance of an unskilled job as difficult as an objectively more demanding job…. [A]n individual who cannot tolerate being supervised may not be able to work even in the absence of close supervision; the *knowledge* that one's work is being judged and evaluated, even when the supervision is remote or indirect, can be intolerable for some mentally impaired persons. Any impairment-related limitations created by an individual's response to demands of work, however, must be reflected in the RFC assessment.

SSR 85-15, 1985 WL 56857, at *6 (emphasis in original). The ALJ limited Thomas to understanding, remembering and carrying out simple to intermediate work, and to an environment that does not require more than occasional interaction with the general public. [Tr. 22].

While substantial evidence on the whole record supports that Thomas would be able to *understand and remember* at least simple work, it does not appear to support that she could *carry out or sustain concentration*, as evidenced by the opinions of Dr. Whitten (2000 and 2005), Dr. Cole, and Dr. Van Pelt. Further, the ALJ's limitation to only occasional contact with the general public does not account for substantial evidence pointing to limitations regarding interactions with coworkers and supervisors, such as the two psychologists' opinions that Thomas is socially limited and unlikely to be able to accept basic changes in a work setting. The RFC assessment does not reflect all impairment-related limitations.

17

Case 3:14-cv-05013-NKL   Document 15   Filed 11/05/14   Page 17 of 19

Finally, the decision is unsupported by the record as a whole in view of Thomas' mental health records, spanning many years. Thomas saw Dr. Andrew, a neurologist and psychiatrist, from August 2005 through November 2008, for treatment of migraines, stress, and anxiety, and was prescribed medications. She was hospitalized for three days in October 2008 after overdosing, and additional inpatient treatment was recommended. She was brought to the hospital in February 2009 after making suicidal threats, and a three- or four-day admission for stabilization was recommended. She was diagnosed with post-traumatic stress disorder and major depressive disorder, recurrent and severe, at the Skyline Center in January 2010, and had one return visit in July 2010, when she was assigned a GAF score of 49, suggesting severe symptoms. In January 2012, she was seen at a community clinic and her diagnoses included major affective disorder. The clinic referred her to Ozark Center for counseling, where she was diagnosed with major depressive disorder, recurrent and severe, and anxiety disorder not otherwise specified, and was prescribed. The pattern of hospitalizations for mental health issues and recommendations for additional hospitalization, and consistent diagnoses of major and severe mental health disorders for which treatment was prescribed, should have been considered in view of the record as a whole.

For the reasons set forth above, remand is required.

### III. Conclusion

The Commissioner's decision is remanded. On remand, the ALJ shall form an RFC consistent with the record as a whole, reflecting careful consideration in accordance with the above discussion, and all impairment-related limitations created by Thomas'

responses to demands of work.  Further, if consulting examiners' opinions are rejected in whole or in part, the ALJ shall provide a detailed explanation why the consistent pattern of the consulting examiners' opinions does not establish that Thomas is disabled.

                                      s/ Nanette K. Laughrey
                                      NANETTE K. LAUGHREY
                                      United States District Judge

Dated:  November 5, 2014
Jefferson City, Missouri